IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD MICHAEL ROE,<br><br>**Defendant.** | CRIM. NO. 1:24-cr-200-BAH |

### DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

This case, which involves no violence or threats of violence, has been charged under statutes that use the uses the terms "harass" and "intimidate." This language in the Cyberstalking and Harassing Telephone Calls statutes may only criminalize communications intended to place someone in fear of physical violence or sexual exploitation. When used otherwise, the charges must be invalidated as unconstitutionally overbroad restrictions on protected speech. And the Government has not alleged Defendant Richard Michael Roe made any statement intended to place any victim in fear of physical violence. Accordingly, Mr. Roe, moves to dismiss the indictment under Rule 12(b)(3)(B)(v), for failure to state an offense, or alternatively, because the underlying statutes are unconstitutionally overbroad.

In support of this Motion, Mr. Roe states as follows:

### BACKGROUND

On June 18, 2024, the United States issued an eight-count indictment ("Indictment") against Mr. Roe. The Indictment charges two criminal statutes: Cyberstalking under 18 U.S.C. § 2261A(2)(B) (Count 1) and Harassing Telephone Calls under 47 U.S.C. § 223(a)(1)(C) (Counts

1

2–8). Count 1 concerned one victim, Victim 1. Counts 2–8 alleged crimes against Victims 1, 2, 3, 4, and 6, as well as two victim businesses, Victim Businesses 1 and 2.

## ARGUMENT

### I. "Harass" and "Intimidate," as Used in the Cyberstalking and Harassing Telephone Calls Statutes, Are Best Read in the Violent Sense.

The Cyberstalking statute, in relevant part, makes it a crime to, "with the intent to kill, injure, harass, [or] intimidate," use "any interactive computer service or electronic communication service . . . to engage in a course of conduct that . . . causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress." 18 U.S.C. § 2261A(2)(B). Similarly, the Harassing Telephone Calls statute prohibits making a telephone call or using a telecommunications device "with intent to abuse, threaten, or harass any specific person." 47 U.S.C. § 223(a)(1)(C). Some of these scienter requirements—intent to kill, injure, or threaten—are more easily definable than others, but there is no evidence in the record indicating that a single telephone call or text message received by any alleged victim in this case conveyed an intent to kill or otherwise injure the recipient. Therefore, the government is forced to rely solely upon the two most vague scienter requirements to support its charge: namely, an intent to "harass," or perhaps to "intimidate."

Neither of these key terms are defined in the statutes. *See* 18 U.S.C. § 2266 (containing definitions of other statutory terms but not "harass" or "intimidate"). But traditional methods of statutory interpretation suggest the terms are properly limited to require an intent to place someone in fear of physical violence.

Dictionary definitions support a violence-based interpretation of "harass" and "intimidate." "[T]he verb 'harass' . . . can mean aggression, even violence: 'worry[ing] and imped[ing] by repeated attacks.'" *United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) (quoting *Harass* (def. 1b), *Webster's Third New International Dictionary of the English Language Unabridged* (1966),

2

and also citing *Harass* (def. 3), *Oxford English Dictionary* (2d ed. 1989) ("*OED*")). According to *Merriam-Webster*, "harass" may mean "to create an unpleasant or hostile situation[,] especially by uninvited and unwelcome verbal or physical conduct."[1] Similarly, "[t]o 'intimidate' can mean a specific, violent action," such as "to force [someone] to or deter [him] from some action by threats or violence." *Yung*, 37 F.4th at 78 (alterations in original) (quoting *Intimidate, OED*, and also citing *Intimidation, Black's Law Dictionary* (10th ed. 2014) ("Unlawful coercion; extortion.")). According to *Merriam-Webster*, one could "intimidate" another by "compel[ling] or deter[ing] by or as if by threats."[2]

The violence-based syntactic range is reinforced by the company in which those words keep. In the Cyberstalking statute, "harass" and "intimidate" are surrounded by clear violence-based terms like "to kill" and "injure." 18 U.S.C. § 2261A(2)(B). Similarly, in the Harassing Telephone Calls statute, "harass" is part of a list that includes "abuse" and "threaten." 47 U.S.C. § 223(a)(1)(C). When construing a word, courts generally give it "more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008) (explaining the "commonsense canon of *noscitur a sociis*"). Because "harass" and "intimidate" are surrounded by clear violence-based terms, those words must be limited to their violence-based definitions.

Indeed, courts have routinely limited "harass" and "intimidate" as used in both the Cyberstalking and Harassing Telephone Calls statutes to violence-based communications. Doing so both protects speech and ensures true offenders do not go unpunished. For example, in *Yung*, the Third Circuit limited "harass" and "intimidate" to their violence-based definitions while affirming a defendant's cyberstalking conviction for publishing various threatening internet

---

[1] Merriam-Webster, *Harass*, https://www.merriam-webster.com/dictionary/harass.
[2] Merriam-Webster, *Initimidate*, https://www.merriam-webster.com/dictionary/intimidate.

3

advertisements, including one that stated the victim "'like[d] it when a man puts his hand around [her] throat and threaten[s] [her] with a knife' and 'gun' before forcing her to have sex." 37 F.4th at 75, 80. The court held that to intimidate, "a defendant must put the victim in fear of death or bodily injury" and to harass, a defendant "must distress the victim by threatening, intimidating, or the like." *Yung*, 37 F.4th at 80.

Likewise, the Fourth Circuit has hinted that the Cyberstalking statute is properly limited to violent intent, noting that "[w]hatever other definitions one might hypothesize for the meaning of 'harass or intimidate,' there can be little doubt that Shrader's stalking falls within the conduct the statute is intended to proscribe." *United States v. Shrader*, 675 F.3d 300, 302–03 (4th Cir. 2012). In that case, the defendant murdered the victim's mother and then "harassed and intimidated [the victim and her husband], causing them to fear for their safety and that of their children." *Id.* at 302–03. And at least one court in this District has recently dismissed a Cyberstalking indictment because the indictment was not "limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct." *United States v. Cassidy*, 814 F. Supp. 2d 574, 582–83 (D. Md. 2011).

Limiting "harass" and "intimidate" to their violence-based definitions makes logical sense. Some real-world examples may be illustrative. If in the wake of the 2021 Ravens' crushing 37–3 preseason defeat of the Commanders, a Baltimore man had texted his best friend in D.C. to tease him about the outcome of the game (knowing full well that his message would not be well-received and may even cause "substantial emotional distress" to the recipient), would he have acted with a criminal intent to "harass" his friend? What if he "utilizes a telecommunications device," such as an iPhone to send his friend multiple memes ridiculing the Commanders with the specific intent to heighten the recipient's humiliation?

4

"Intimidate" may at first blush sound more definitive, but even that word presents a definitional conundrum. Again, the potentially culpable conduct runs the gamut. Under a broad reading of the statute, consider a mother whose teenage son has stayed out long beyond his curfew; if she texts him every ten minutes for several hours threatening to ground him indefinitely if he doesn't respond, has she threatened him with an intent to render him "timid or fearful?" Does a boss who sends a series of aggressive emails to their lowest performing employee risk up to five years in federal prison?

Without proper limitation, it is not clear at what point a series of innocuous messages transforms into a prohibited "course of conduct" intended to "harass" or "intimidate." A judicial standard of "I know it when I see it" is cold comfort when a violation of the federal cyberstalking statute carries a penalty of up to five years in federal prison. 18 U.S.C. § 2261(b)(5). Accordingly, the Court should narrowly construe the definitions of "harass" and "intimidate" in the Cyberstalking and Harassing Telephone Calls statutes to intent to place someone in fear of physical violence.

## II. Under a Violence-Based Definition, The Indictment Fails to State and Offense Because Government Does Not Allege Mr. Roe Threatened or Incited Violence Against Anyone.

The conduct alleged in the Government's Complaint does not rise to the violence-based definitions of "harass" or "intimidate," and the Indictment must be dismissed. The Government did not charge Defendant with speech traditionally known to be unprotected, like obscenity or true threats. No allegation in the Indictment or Affidavit even suggests that Defendant ever threatened violence or attempted to incite violence against anyone. Nor is there any allegation that Defendant shared or published obscene material or was subject to or violated any restraining order.

5

Instead, Defendant is alleged to have: 1) referenced walking by V1's car, ECF no. 1 at ¶ 21; 2) discussed V1's deceased father's funeral, *id.* at ¶ 26, 28-29, 31, 33; 3) referenced his own alleged communications, ¶ 35; 4) accused V1 of cyberstalking Defendant, ¶ 36; 5) mocked V2, ¶ 39; 6) rumored that Defendant hired a private investigator to look into V1's activities, ¶ 44-45; 7) disrupted V4, V2, and friends of V2 with frequent calls and messages discussing aspects of their lives, ¶49-51; and 8) called VB1 and VB2, ¶ 52-54.  No call is alleged to even reference, let alone threaten, violent conduct, unlike the vast majority of successful cyberstalking prosecutions. *See, e.g., United States v. Shrader*, 675 F.3d 300, 304 (4th Cir. 2012) (violent threats); *United States v. Moreland*, 207 F. Supp. 3d 1222, 1227 (N.D. Okla. 2016) (similar).

When courts have upheld cyberstalking prosecutions for non-violent communications, such communications have almost always involved threats of sexual exploitation or blackmail. *See, e.g., United States v. Uhlenbrock*, No. SA-21-CR-84-XR, 2023 WL 4042587, at *1 (W.D. Tex. June 13, 2023), aff'd, 125 F.4th 217 (5th Cir. 2024) (posting sexual images of victim); *United States v. Ackell*, No. 15-CR-123-01-JL, 2017 WL 2913452, at *3 (D.N.H. July 7, 2017), aff'd, 907 F.3d 67 (1st Cir. 2018) (sexual threats and threatened distribution of sexually explicit images of victim).

Indeed, of twenty-nine successful cyberstalking cases surveyed, only three fact patterns did not involve a threat of violence or sexual exploitation: *Haapaniemi v. Hijar*, No. EP-21-CV-309-DCG, 2022 WL 105127, at *2 (W.D. Tex. Jan. 10, 2022) (threat of identity theft); *United States v. McCaslan*, No. 8:23-CR-00749-DCC-1, 2024 WL 4471360, at *3 (D.S.C. Oct. 11, 2024) (communications attempting to frame victim for crimes including anthrax poisoning); and *United States v. Matusiewicz*, 84 F. Supp. 3d 363, 367 (D. Del. 2015), *aff'd sub nom. United States v.*

6

*Gonzalez*, 905 F.3d 165 (3d Cir. 2018) (sending messages accusing victim of sexual abuse of minor children, in connection with kidnapping).

Based on counsel's research, the GOvernment almost never charges cyberstalking in the absence of such facts and, in the few cases where it has, it has fared poorly. *See, e.g.*, *Cassidy*, 814 F. Supp. 2d at 582–83. For that reason, too, the Indictment one should be dismissed.

### III. Reading "Harass" and "Intimidate" in the Nonviolent Sense Renders the Cyberstalking and Harassing Telephone Calls Statutes Unconstitutionally Overbroad.

Under the violence-based definitions of "harass" and "intimidate," the Cyberstalking and Harassing Telephone Calls statutes pose no First Amendment problems because their reach is limited to true threats and incitement to violence, both of which are unprotected speech. *See Elonis v. United States*, 575 U.S. 723 (2015); *Brandenburg v. Ohio*, 395 U.S. 444 (1969). However, without such a limitation, the statutes have the potential to reach so much protected speech that they are unconstitutionally overbroad.

A law is overbroad and facially invalid if it "inhibit[s] the exercise of First Amendment rights" and "if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chi. v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–15 (1973)). The doctrine is an exception to "[t]he traditional rule [] that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458 U.S. 747, 767–68 (1982). The doctrine exists because "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 521 (1972). Where a law is found

7

overbroad, the proper remedy is to "invalidate all enforcement of that law." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

The Supreme Court has stated that "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. Then, the court must turn to whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297.

If the Court, at step one, determines that "harass" and "intimidate" may cover more than just speech intended to place someone in fear of physical violence, then by definition, the Cyberstalking and Harassing Telephone Calls statutes criminalize a substantial amount of protected expressive activity. Under broad definitions of "harass" or "intimidate," is entirely unclear at what point a person's conduct—even conduct that the person may know is unwelcome and unsolicited by the intended recipient—becomes so "harassing" or "intimidating" that it violates federal criminal law. Instead, judges are left to answer these difficult questions, to the detriment of criminal defendants.

When assessing constitutional facial validity, it is not sufficient to say that "the conduct of the person making the [facial] attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Ferber*, 458 U.S. at 769. What matters is the *actual* statute before the Court; if "the impermissible applications" of that statute "are substantial when judged in relation to the statute's plainly legitimate sweep," then it must fail. *Morales*, 527 U.S. at 52. Courts that have concluded otherwise, like the First Circuit, are thus wrong to claim that the Cyberstalking

8

statute does not target speech simply because it does not explicitly name protected political speech such as protesting or picketing. *See United States v. Ackell*, 907 F.3d 67, 74–75 (1st Cir. 2018).

That the Cyberstalking statute is limited to speech that in fact "causes," or "would be reasonably expected to cause substantial emotional distress" would not be enough to save it from the overbreadth problems created by adopting the broad definition of "harass." To the contrary, "[t]he First Amendment protects lots of speech that is substantially emotionally distressing," "offensive," and "annoying." *Yung*, 37 F.4th at 74, 77; *see also Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("[S]peech cannot be restricted simply because it is upsetting or arouses contempt."); *Cassidy*, 814 F. Supp. 2d at 582 (D. Md. 2011) ("[T]he Supreme Court has consistently classified emotionally distressing or outrageous speech as protected."). For example, the First Amendment has been held to protect the right to picket a marine's funeral with signs like "Thank God for Dead Soldiers," "God Hates [derogatory term for gays]," and "You're Going to Hell." *See Snyder*, 562 U.S. at 448. Such statements, while "deeply offensive" and "emotionally distressing," are "still covered by the First Amendment." *Yung*, 37 F.4th at 77.

Indeed, broad harassment laws have frequently been struck down on First Amendment grounds. Because "broad harassment laws that punish offensive speech steer into the territory of the First Amendment . . . courts have often struck them down." *Yung*, 37 F.4th at 78–79 (collecting cases); *see, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1185 (6th Cir. 1995) (striking down university harassment policy as overbroad); *Colorado v. Moreno*, 506 P.3d 849, 854–55 (Col. 2022) (holding Colorado's harassment statute "unconstitutionally overbroad" insomuch as it covered communications "intended to harass" and instead limiting the statute to communications "intended to . . . threaten bodily injury or property damage . . . or that [are] obscene").

9

Accordingly, federal prosecutors have usually been careful to seek convictions only in cases where clearly unprotected speech was at issue. *See, e.g.*, *Shrader*, 675 F.3d at 302–03 (4th Cir. 2012). Others have failed. *See, e.g.*, *Cassidy*, 814 F. Supp. 2d at 582–83 (D. Md. 2011).

Without a properly limited definition of "harass" or "intimidate," the Cyberstalking and Harassing Telephone Calls criminalize a substantial amount of protected speech and are unconstitutionally overbroad. Accordingly, if the Court determines the statutes extend to broader definitions of "harass" and "intimidate," then the Court should find that the statutes cannot be the basis for the Indictment and so dismiss.

WHEREFORE, for those reasons, Defendant Richard Michael Roe respectfully requests this Court to grant this Motion and dismiss the Indictment.

Dated: May 27, 2025

Respectfully submitted,

_____/s/_____
Jonathan L. Fahey
Holtzman Vogel
2300 N Street, NW, Suite 643
Washington, DC 20037
(202) 737-8808
jfahey@holtzmanvogel.com

_____/s/_____
Andrew C. White (Federal Bar No. 08821)
SILVERMAN, THOMPSON, LLC
400 E. Pratt Street, Suite 900
Baltimore, Maryland 21201
(410) 385-2225
awhite@silvermanthompson.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 27, 2025, a copy of the foregoing Motion was e-filed with the Clerk of the United States District Court of Maryland via CM/ECF, which notifies all counsel.

/s/ _____